UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL D. DALTON, et al.,

Plaintiffs,

v.

CHOICEONE BANK,

Defendant.

Case No. 1:26-cv-163

Hon. Hala Y. Jarbou

______________________________/

**ORDER**

Plaintiffs Michael D. Dalton, Leah M. Dalton, and Michael Deem bring this civil action against ChoiceOne Bank. Plaintiffs claim immunity from state law foreclosure proceedings on the grounds that they are successors in interest to a federal land patent granting them unassailable title. Defendants moved to dismiss for failure to state a claim and for lack of subject matter jurisdiction. (Def.'s Mot. to Dismiss, ECF No. 20.) On July 15, 2026, Magistrate Judge Ray Kent issued a Report and Recommendation (R&R) that the Court grant Defendant's motion to dismiss. (R&R, ECF No. 72.) Before the Court are Plaintiffs' refiled objections to the R&R. (Pls.' Objs., ECF No. 84.)

Under Rule 72 of the Federal Rules of Civil Procedure,

> [t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3). For reasons set forth below, the Court will overrule Plaintiffs' objections and adopt the R&R.

In 2024, Leah and Michael Dalton stopped making mortgage payments on their residence and a commercial property they owned. (Def.'s Br. in Supp. of Mot. to Dismiss 3, ECF No. 21.) That same year, Plaintiffs applied for and received copies of the original federal land patents for their respective properties from the Bureau of Land Management. (*See* First Am. Compl. ¶¶ 37, 51, ECF No. 6.) After acquiring these copies, and before Defendant initiated foreclosure proceedings, Plaintiffs filed "Quit Claim Deed[s]" for the respective properties with the Ingham County Register of Deeds in October and November of that year. (*See id.* ¶¶ 38, 56.) In April 2025, Defendant obtained Sheriff's deeds to Plaintiffs' properties through two separate foreclosure sales. (Def.'s Br. 3.) After the six-month statutory redemption period expired, Defendant filed two separate claims for judgment of possession in summary proceedings before a state court judge. (*Id.*) By February 2026, Defendant had obtained judgments in their favor on both the Daltons' residence and the commercial property. (*Id.* at 4.)

In 2026, Plaintiffs filed this suit to collaterally attack those state court judgments. Invoking this Court's federal question jurisdiction, Plaintiffs claim they stand in the shoes of the original federal land patentees, which entitles them to certain federal "forever" rights granting them superior title to both properties and immunity from foreclosure. (*See* First Am. Compl. ¶¶ 43, 61.) Plaintiffs argue that Michigan's summary foreclosure proceedings violated their rights under the Seventh and Fourteenth Amendments to the U.S. Constitution, Michigan's Organic Acts, and the original federal land patents. (*Id.* ¶ 1.) Defendant moved to dismiss for failure to state a claim and lack of subject matter jurisdiction.

The R&R recommended granting Defendant's motion to dismiss on two grounds. First, the magistrate judge concluded that Plaintiffs failed to identify any federal statute, treaty, or constitutional provision that recognized an individual right to be delinquent on one's mortgage

payments yet free from the specter of foreclosure. (R&R 4.) The R&R also recommended Plaintiffs' claims be dismissed for lack of subject matter jurisdiction because the parties are all citizens of Michigan, and controversies over land do not raise a federal question even when one of the parties can trace their title to a federal land patent. (*Id.* at 5–6.)

Plaintiffs first object to the R&R's conclusion that they have failed to state a claim. They argue in colorful terms that the magistrate misrepresented their claims to deny them access to federal court. (Pls.' Objs. 6.) In their second objection, Plaintiffs maintain this Court has subject matter jurisdiction. (*Id.* at 9.) In objections three and four, Plaintiffs argue that their pending motions for partial summary judgment and preliminary relief are not moot. (*Id.* at 13, 16.) Ultimately, Plaintiffs' four objections boil down to a single inquiry: whether Plaintiffs have established federal question jurisdiction. Because they have not, the Court will dismiss the case.

By statute, district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This is not a roving grant of authority to hear any case that may touch upon or concern a federal matter. Rather, a case arises under federal law when the federal question appears on the face of the "well-pleaded complaint." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *see also Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). Federal question jurisdiction exists "when the cause of action (1) is created by federal statute or (2) presents a substantial question of federal law." *Miller v. Bruenger*, 949 F.3d 986, 991 (6th Cir. 2020). Relevant here, a suit seeking to vindicate interests in land obtained through the operation of federal law does "not arise under [federal law] for jurisdictional purposes unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such [federal] law," and resolving that federal question is outcome determinative. *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912). Put

succinctly, "[f]ederal land patents and acts of Congress [creating title] do not provide bases for federal question jurisdiction." *Virgin v. County of San Luis Obispo*, 201 F.3d 1141, 1143 (9th Cir. 2000); *see also Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 676 (1974). With these principles in mind, the Court turns to Plaintiffs' objections.

Plaintiffs begin by accusing the magistrate judge of bias. These meritless allegations are made without evidence. The mere fact that a judge has ruled adversely to a party is never adequate grounds for finding bias, and Plaintiffs present no evidence that the magistrate judge's opinion stems from an extrajudicial "personal bias . . . arising out of the judge's background and association and not from the judge's view of the law." *Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Plaintiffs fail to distinguish between necessary judicial biases formed through the process of coming to one view of the law to the exclusion of another, and impermissible extrajudicial or personal bias. "Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *Liteky v. United States*, 510 US. 540, 551 (1994) (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943)). The magistrate judge has faithfully exercised his duty to apply the law, and Plaintiffs offer nothing to substantiate their allegations to the contrary.

Plaintiffs next attack the R&R's reliance on *Wisconsin v. Glick*, 782 F.2d 670 (7th Cir. 1986). In *Glick*, the Seventh Circuit held that federal patents do not prohibit the creation of mortgage interests or interfere with "claims subsequently arising under state law." *Id*. at 672. Plaintiffs argue that *Glick* is not controlling authority, and that it can be distinguished on its facts. As an initial matter, this Court is free to examine the law of other circuits when it confronts "a legal question that [the Sixth Circuit has] not previously passed upon." *United States v.*

*Washington*, 584 F.3d 693, 698 (6th Cir. 2009) (quoting *United States v. Houston*, 529 F.3d 743, 762 (6th Cir. 2008)). Here, it was entirely appropriate for the magistrate judge to look outside the Circuit for a rule of decision. And while this Court found no reported Sixth Circuit decisions on point, two unreported cases confirm *Glick*'s central holding. *See Hynes v. Charter Township of Waterford*, No. 97-1829, 1998 WL 739818, at *2 (6th Cir. Oct. 6, 1998); *Cragin v. Comerica Mortg. Co.*, No. 94-2246, 1995 WL 626292, at *1 (6th. Cir. Oct. 24, 1995).

Plaintiffs' attempts to distinguish *Glick* on its facts are unconvincing. First, there is no indication that Plaintiffs' patents here are any less "homegrown" than the patents described in *Glick*. In *Glick*, the defendant attached his "patent" to a genuine 1851 federal land patent signed by President Millard Fillmore. *Glick*, 782 F.2d at 671. Similarly, here Plaintiffs filed with the Ingham County Register home drawn "Quit Claim Deed[s]," based on original land patents signed by President Martin Van Buren. (*See* First Am. Compl. ¶¶ 37–45, 55–63.) And second, the fact that *Glick* was an appeal from a state criminal conviction is immaterial. *Glick* itself relies on a prior civil case for the ironclad proposition that "a controversy regarding land has never been regarded as presenting a federal question simply because one of the parties to it has derived his title from a patent or under an act of Congress." *Hilgeford v. Peoples Bank*, 776 F.2d 176, 178 (7th Cir. 1985).

The Court next turns to Plaintiffs' argument that *Fenn v. Holme*, 62 U.S. 481 (1858), prohibits Michigan's statutory foreclosure proceedings. In *Fenn*, the U.S. Supreme Court held that a plaintiff bringing an ejectment action in federal court must prove legal title, and that equitable title alone will not suffice. *Id.* at 483. But this rule is entirely inapposite to the present case. The primary issue in *Fenn* was whether federal courts sitting in equity had to follow state equity rules. State equity practice at the time varied significantly by jurisdiction, with some states

permitting ejectment actions to be maintained on equitable title alone. *Id.* at 484-85. While the *Fenn* Court held that federal courts did not have to follow the state rule, it did not preempt or disturb existing state equity practice. *Id.* *Fenn* therefore provides no basis for collaterally attacking Michigan's statutory foreclosure proceedings.

More fatally, *Fenn* says nothing about controversies over land establishing federal question jurisdiction. Plaintiffs' invocations of *Fenn* elide the important difference between the power of federal courts to issue equitable remedies, which comes from the Judiciary Act of 1789, *see Trump v. CASA*, 145 S. Ct. 2540, 2551 (2025), and general federal question jurisdiction, which Congress first granted to federal courts in 1875, *see* Act of Mar. 3, 1875, § 1, 18 Stat. 470 (codified at 28 U.S.C. § 1331(a)). Indeed, *Fenn* predates statutory federal question jurisdiction by 17 years. *Fenn* was a federal case because title to the disputed land was held by the federal government. *See Fenn*, 62 U.S. at 488. Here, by contrast, the federal government last held legal title to the land in 1837. Plaintiffs initially obtained title to both properties by warranty deeds. (*See* First Amended Compl. ¶¶ 35, 53.) And following separate foreclosures, title passed to ChoiceOne Bank. (*See* Def.'s Mot to Dismiss, Ex. 3, Sheriff's Deed for Residential Property 1–2, ECF No. 21-3; Ex. 4, Sheriff's Deed for Commercial Property 1–2, ECF No. 21-4.)

Plaintiffs nevertheless advance several bases for federal question jurisdiction, including the Seventh and Fourteenth Amendments, three 19th century statutes providing for Michigan's entry into the Union, and two federal land patents, plus their authorizing statutes. But federal question jurisdiction is not created by mere citation. As noted above, a claim arises under federal law "when the cause of action (1) is created by federal statute or (2) presents a substantial question of federal law." *Miller*, at 949 F.3d at 991. Plaintiffs' case does not qualify under either prong. As to their statutory basis for federal question jurisdiction, none of the referenced statutes create a federal

cause of action, nor does the first amended complaint raise a substantial question regarding their construction. Similarly, federal land patents do not create causes of action, and Plaintiffs do not put into controversy the interpretation of the 1837 federal patents.

Plaintiffs' Seventh Amendment argument is similarly unpersuasive. The Seventh Amendment guarantees a jury trial for suits at common law where the amount in controversy exceeds twenty dollars. *See* U.S. Const. Amend. XII. Here, Plaintiffs allege that Michigan deprived them of their Seventh Amendment rights to a jury trial through its statutory summary foreclosure proceedings. (*See* First Am. Compl. ¶ 25.) That argument is unavailing for several independent reasons. First, the Seventh Amendment is a procedural guarantee that must attach to an existing cause of action. It is not on its own "a substantive basis for recovery." *Stolz v. J & B Steel Erectors, Inc.*, 439 F. Supp. 3d 380, 987 (S.D. Ohio 2020). Plaintiffs identify no federal cause of action, and this Court has not located one. Second, while Plaintiffs lament that Michigan may have abrogated its common law action for ejectment by statute, *see New Prods. Corp. v. Harbor Shores BHBT Land Dev., LLC*, 866 N.W.2d 850, 859, 860 n.5 (Mich. Ct. App. 2014), that issue does not raise a federal question because the Michigan Legislature is free to abrogate Michigan's common law, *see Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434, 460 (Mich. 2020). Third, the Supreme Court has never incorporated the Seventh Amendment's jury requirement for suits at common law against the states. *See Gasparini v. Center for Humanities, Inc.*, 518 U.S. 415, 432 (1996); *McDonald v. City of Chicago*, 561 U.S. 742, 765 n.13 (2010). Plaintiffs have therefore failed to establish any viable claim under the Seventh Amendment.

Finally, Plaintiffs suggest *Oneida Indian Nation of N.Y. State v. Oneida County*, 414 U.S. 661 (1974), establishes that controversies over land originally granted by federal land patent raise a federal question. This is a misstatement of law. The *Oneida* Court was careful to state that it

was establishing a limited exception to the general rule that "a controversy in respect of lands has never been regarded as presenting a Federal question merely because one of the parties to it has derived his title under an act of Congress." *Id.* at 676 (quoting *Shulthis*, 225 U.S. at 570). In *Oneida*, the Supreme Court held that a suit by the Oneida Nation seeking to vindicate its interests in tribal lands raised a federal question because the suit raised the "not insubstantial claim that federal law . . . has continuously protected from the time of the formation of the United States . . . possessory rights to tribal lands . . . ." *Id.* at 677. The Nation's right to the lands relied in part on claims of aboriginal title, which placed into controversy the construction of the Tribe's federal treaty rights and the Nonintercourse Acts. *Id.* at 677–78. As Plaintiffs are not an Indian tribe and do not claim aboriginal title, *Oneida* provides them no aid.

Before concluding, it is necessary to address the issue of Plaintiffs' demeanor. Pro se litigants like the Daltons and Deem are subject to Federal Rule of Civil Procedure 11. They may not make frivolous legal arguments or file papers with the court for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). In concert with Rule 11, this Court's inherent authority to superintend its docket empowers it "to sanction bad-faith conduct and to enjoin vexatious litigants from further abuse." *Cassaday v. U.S. Dist. Ct.*, No. 1:25-cv-13076, 2025 WL 2997867, at *4 (E.D. Mich. Oct. 24, 2025) (citing *United States ex rel. Odish*, 843 F. App'x 748, 750 (6th Cir. 2021)).

Plaintiffs have levied a panoply of abusive, meritless, and conspiratorial accusations at the magistrate judge. Plaintiffs claim that the magistrate judge should be imprisoned and disbarred for being the agent of a "many headed monster." (Pls. Objs. 3.) In Plaintiffs' telling, the magistrate judge is "biased," a "co-conspirator," and "part and parcel of a seditious conspiracy" to steal Plaintiffs' property. (*Id.*) Later in their objections, Plaintiffs call for the magistrate judge's

impeachment, and for "swift and severe retribution" against him. (*Id.* at 11.) This language is entirely unacceptable and beneath the standard of conduct expected of members of a civilized society. This Court has previously admonished Plaintiffs for their inflammatory filings demonizing Defendant and the magistrate. (*See* Order Striking Pls.' Objs., ECF No. 78; Order Denying Pls.' Mot. to Reconsider, ECF No. 83). Plaintiffs are now on express notice that future abusive filings, frivolous claims, or meritless accusations may result in sanctions.

In conclusion, the Court overrules Plaintiffs' objections and dismisses Plaintiffs' case for lack of subject matter jurisdiction. Accordingly,

**IT IS ORDERED** that the Report and Recommendation (ECF No. 72) is **APPROVED** and **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendant ChoiceOne Bank's motion to dismiss (ECF No. 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for partial summary judgment (ECF No. 10) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs' motions for emergency relief (ECF Nos. 16, 29, 31) are **DENIED AS MOOT**.

A judgment will issue in accordance with this Order.

Dated: September 18, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE